ALLISON REALTY Co. v. GRAVES INVESTMENT Co.

155 So. 745.
Opinion Filed May 25, 1934.

50

*Mitchell D. Price & Charles W. Zaring,* for Appellant;

*Albert B. Bernstein,* for Appellee;

*Morton B. Adams,* as *Amicus Curiae.*

WHITFIELD, J.—On August 3, 1932, the Graves Investment Company, a Florida corporation, filed a suit in equity under Chapter 14572, Acts of 1929, as amended by Chapter 15053, Acts of 1931, Section 1003 (1·), *et seq.,* Cum. Supp., C. G. L., 1934, to foreclose the lien of two tax deeds issued by the Clerk of the Circuit Court for the State, and owned by the complainant. One of the tax deeds is dated June 22, 1932, based upon tax sale certificate No. 28596, dated August 1, 1927, for unpaid State, county and district taxes for the year 1926, upon the "north 80 feet of Block 87, South, City of Miami, Plat Book B, page 41, in the County of Dade, State of Florida." The other tax deed, dated April 8, 1932, is based upon tax sale certificate No. 14242, issued August 5, 1929, for unpaid State, county and district taxes for the year 1928 upon "all except North 80 feet, Block 87, City of Miami, South, in the County of Dade, State of Florida." Complainant paid the City of Miami taxes for the year 1931. A State tax sale certificate includes the amount of unpaid State, county and district taxes for the given year on lands described in the certificate.

When the foreclosure suit was filed, the defendant, Allison Realty Company, held a tax sale certificate, No. 34227,

issued by the City of Miami, dated June 4, 1928, for unpaid city taxes for the year 1927, upon the south 204 feet of Block 87, which appears to be all of Block 87 except the north 80 feet of the Block, and is the same area that is covered by certificate No. 14242 above.

The court decreed that the lien of the complainant's tax deed which is based on the tax sale certificate No. 14242, for unpaid State and county taxes for the year 1928, is superior to, and has priority over, the lien of the tax sale certificate No. 34227 for unpaid municipal taxes for the year 1927 on the same property held by the defendant, Allison Realty Company.

This ruling is assigned as error by the sole appellant, the Allison Realty Company.

Counsel for appellant states the question presented for decision to be:

"Can a tax certificate issued by the City of Miami, Florida, based upon unpaid taxes properly assessed, be eliminated and extinguished by the foreclosure of a subsequent tax certificate or by the foreclosure of a tax deed based upon a subsequent tax certificate issued by the State and county in which such land is situated?"

Counsel for appellee states the question presented for decision to be:

"Is the lien of a subsequent tax sale certificate for general taxes, or the lien of a tax deed based upon a subsequent tax sale certificate for general taxes, superior in dignity to the lien of an earlier tax sale certificate for general taxes?"

The property did not sell for enough to pay all the asserted first liens for State, county and municipal taxes due and unpaid on the land. Other liens and claims were severally adjudicated by the decree. Only the defendant, Allison Realty Company, appealed, and it claims that the

amount of its tax sale certificate lien for city taxes for 1927 should have been paid ratably on an equal basis with complainant's lien evidenced by a tax deed based on a tax sale certificate for unpaid State and county taxes for the year 1928 on the same property.

This Court has held that the statutes of Florida placed upon an equal footing the statutory first liens for State, county and municipal taxes as distinguished from liens of special assessments for public improvements. City of Sanford v. Dial, 104 Fla. 1, 142 So. 233; Pockel v. Dowling, 108 Fla. 582, 146 So. 662. Special assessments for public improvement benefits are not of equal dignity with taxes for general State, county and municipal purposes. City of Tampa v. Lee, filed Nov. 13, 1933.

It is contended that even though State, county and municipal tax liens for the same years are superior first liens and are of equal dignity, yet such a State and county first lien for a subsequent year's tax is superior to a city tax first lien for taxes of a prior year.

Counsel for complainant, the appellee here, argue that in other states, under statutes somewhat similar to those in Florida, a rule is applied that, holders of first liens for taxes have a right to priority of payment in the inverse order of the years for which the taxes were assessed, that is, a first lien for taxes assessed for a later year, either extinguishes or has priority in payment over a first lien for taxes of a prior year; and that the same rule should be applied under the Florida statutes in order to conserve the efficiency of the taxing power to support the government upon the theory that to acquire sufficient revenue for current governmental purposes, it is essential to collect on the latest tax assessments or liens even at the sacrifice of prior tax assessments or liens.

Whatever may be the rule in other states, whether based on peculiar provisions of statutes or upon principles of law developed and applied by the courts, the statutes in Florida contemplate that all liens for State, county and municipal governmental taxes, whether the liens are severally for taxes of the same year or for different years, shall be first liens of equal dignity and legal force and effect without priorities as between such first liens upon the property taxed; and that such first liens for State, county and municipal taxes shall continue in full force and effect until legally discharged by payment, redemption, cancellation, or as otherwise duly provided by law, such as by sale in foreclosure proceedings or by other legal processes.

The Constitution of Florida provides that:

"The Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year," (Sec. 2, Art. IX); and "shall authorize the several counties and incorporated cities and towns in the State to assess and impose taxes for county and municipal purposes, * * * and all property shall be taxed upon the principles established for State taxation * * *." (Sec. 5, Art. IX.)

The statutes of Florida provide that:

"All taxes imposed pursuant to the Constitution and laws of this State shall be a first lien superior to all other liens on any property against which such taxes have been assessed which shall continue in full force and effect until discharged by payment * * *." (Sec. 894 C. G. L., Sec. 1, Ch. 14572, Acts '29.) "All real and personal property shall be subject to taxation on the first day of January of each year, and this Chapter shall create a lien upon such property for the purpose thereof superior to all others * * *." (Sec. 896 [696] C. G. L.)

' For each year's tax the statute gives an additional superior lien on the property, which lien continues until satisfied.

In assessing city taxes, "the amounts assessed on any real estate shall become a lien on the first day of January of the year in which the assessment is made on such real property and the lien for such amount and for all interest and charged thereon shall continue until payment thereof." (Sec. 45, Ch. 10847, Acts of 1925, the Charter Act of the City of Miami.) "Cities and incorporated towns, unless their special charters provide otherwise, shall conform to the State law in force with reference to the care, custody, sale and redemption of tax certificates insofar as they may be applicable, and shall record a list of such certificates with the clerk of the circuit court of their respective counties." (Sec. 980 [765] C. G. L.)

Lands may be sold for non-payment of taxes, and tax sale certificates issued to purchasers at the sale or to the taxing unit in the absence of purchasers, evidence the taxes due on the land for one year. (Secs. 3, 5, 6, 8, Ch. 14572, Acts of 1929.) Tax sale certificates may be transferred by endorsement "at any time before they are redeemed or a tax deed is executed therefor." Sec. 982 (787) C. G. L., Sec. 980 (765) C. G. L.

"Any person may purchase any certificate of land sold or certified to the State for taxes levied for the year 1928 and subsequent years from the Clerk of the Circuit Court of the County in which such land is situated by paying to such clerk the amount of such certificate and interest thereon. * * * Should it appear that the land covered by the oldest certificate to be transferred or canceled has not been assessed, or is assessed to the State, for any subsequent year, the party purchasing or redeeming the oldest certifi-

cate shall pay to the Clerk the taxes for each of such subsequent omitted years, based upon the last assessed valuation, with interest thereon, at the rate which would be required for the redemption of the certificate." (Sec. 10, Chap. 14572, Acts of 1929.) "The clerks of the circuit court of the several counties of the State of Florida are hereby authorized and directed to allow the redemption or purchase * * * of any and all tax certificates held by the State of Florida issued in the year 1917 and prior thereto upon the payment of the amount of such certificate or certificates, or such portion thereof as the part to be redeemed or purchased shall' bear to the whole, and the subsequent omitted taxes, or taxes that have not been paid, including taxes for the year in which redemption or purchase is made, if made after the first day of April, with interest on such certificates and on unpaid taxes for the year 1916 and prior thereto * * *." (Sec. 993, C. G. L.) "The clerks of the Circuit Courts of the several counties of the State of Florida are hereby authorized and directed to allow the redemption or purchase in whole or in part, where the part to be redeemed or purchased can be ascertained by legal and usual subdivision, of any and all tax certificates held by the State of Florida, that shall have been issued in the year 1918 and subsequent years, or that shall hereafter be issued, upon the payment of the amount of such tax certificate or certificates, of such portion thereof as the part to be redeemed or purchased shall bear to the whole with interest thereon and the payment of any and all subsequent unpaid or omitted taxes due on the land to be redeemed or purchased, with interest thereon * * *." (Sec. 11, Chap. 14572, Acts of 1929.)

"The holder of any tax certificate at any time two years after the date of its issuance may obtain a tax deed to the

land therein described by application to the clerk of the circuit court of the county wherein such land is situated as provided by law, and the surrender of such certificate and the payment to the clerk of the proper amount for the redemption or surrender of all other outstanding subsequent certificates covering said land and the payment to the clerk of a fee of fifty cents for each certificate then redeemed and for searches to ascertain all outstanding certificates," etc. (Sec. 12, Chap. 14572, Acts of 1929.)

The statutory tax deed prescribed by Section 12, Chapter 14572, is required to state that the applicant for the tax deed has produced and surrendered to the clerk of the circuit court a tax certificate designated by number, by which certificate it appears that described land was sold for unpaid taxes for a stated year, and that the applicant has redeemed (or purchased and surrendered) all other outstanding subsequent tax certificates covering said land. The tax deed is required to state that the State of Florida does convey unto the grantee and his heirs and assigns the described land, "provided, however, that said land shall continue subject and liable for any unpaid taxes thereon." If there are any outstanding tax sale certificates or other tax liens against the land, then there are "unpaid taxes thereon" evidenced by such tax sale certificates or other tax liens. The following statutory proceedings are not *in rem,* but only *quasi in rem.*

"Any holder of a tax deed or of a tax certificate shall have a lien thereunder for the amount paid therefor upon the land described therein and such lien may be enforced and foreclosed by suit in equity as provided by law for the enforcement of statutory liens." (Sec. 1020 [794] C. G. L.) "Any holder of a certificate of tax sale or a tax deed therefor, whether heretofore or hereafter issued, including

the State of Florida, is hereby authorized on and after January 1st, 1930, to file a bill in chancery to foreclose the lien of such certificate or deed * * *." Sec. 1, Chap. 15053, Acts 1931.) "A bill of complaint, unless in a suit of the State, shall be sworn to, and shall briefly set forth the fact of the issuance of the tax certificate or deed and the fact that complainant has paid all omitted and subsequent taxes and interest thereon and has redeemed all subsequent tax sale certificates affecting the same land * * *." (Sec. 14, Ch. 14572, Acts 1929.) "All those having or claiming any interest in any lands embraced in any of such tax sale certificates or deeds, by reason of ownership, lien or otherwise, may be made parties to such suits, and personal service of process and constructive service by publication shall be made and given in accordance with the law applicable to the foreclosure of mortgages upon real estate unless otherwise herein provided." (Sec. 15, Chap. 14572, Acts 1929.)

"If the Court shall determine that any tax, tax sale certificate, tax deed or portion thereof is illegal, the court shall enter a decree for such taxes, or portion thereof, as may be due and unpaid, with penalty, interest and costs * * *." (Sec. 22, Ch. 14572.)

"The final decree in any such action shall determine the amount due on the tax certificate or deed and omitted subsequent taxes and subsequent tax sale certificates, including a reasonable attorney's fee and costs * * *." (Sec. 23, Chap. 14572, Acts 1929.)

"The purchaser at any sale in suits for the foreclosure of tax certificates or deed shall be entitled to a deed and the same process and remedies to obtain possession of the premises as in suits for the foreclosure of mortgages. The title to the land conveyed by such deed shall be indefeasible

as to all parties defendant in the action." (Sec. 28, Chap. 14572.)

"Before any person or corporation other than the State shall file suit on any tax certificate or deed, he, she, or it shall pay to the Clerk the proper amount for the redemption or purchase of all omitted subsequent taxes and outstanding subsequent certificates covering the land, including the Clek's fees for each certificate and for all searches as now provided by law when a certificate is filed for tax deed; and all such sums paid out as in this section provided, shall be set out in the bill of complaint and recovery of such sums shall be provided for in the final decree." (Sec. 29, Chap. 14572.)

The policy and intent of the Florida statutes are that all State, county and municipal taxes legally assessed against property shall be first liens superior to all other liens upon the property; that such liens shall be paid without priorities among such liens whether the taxes were assessed for the same or different years; and that all tax liens against property shall be paid or otherwise legally discharged before an indefeasible tax title to the property is obtained.

The statutory provisions under which administrative tax deeds are issued by the clerk of the circuit court, contemplate that all tax liens upon the property conveyed shall be paid or legally satisfied before an administrative tax title becomes indefeasible; and as in obtaining a tax deed there is no judicial adjudication of outstanding tax liens on the property, the statute requires all tax deeds to provide "that said land shall continue subject and liable for any unpaid taxes thereon"; so a tax deed is not indefeasible if there are unpaid taxes on the land; and tax sale certificates represent unpaid taxes.

A sale of land is made each year for unpaid State, county

and district taxes of the previous year. The purchaser at the sale upon payment therefor receives a tax sale certificate representing the unpaid taxes and costs for the one year, and is not required to pay taxes that remain unpaid for previous years. A tax sale certificate so issued to a purchaser at the sale may be transferred by endorsement, and constitutes and remains a first lien upon the land covered by the tax sale certificate until the taxes, interest thereon, and authorized expenses are discharged by payment or otherwise as may be provided by law.

When a tax sale certificate is issued to the State, in the absence of a purchaser at the tax sale, such certificate until redeemed may be purchased from the State upon payments being made as required by law. Sections 10 and 11, Chapter 14572, Section 993 C. G. L.

If such tax sale certificate is not redeemed from the purchaser, a tax deed may in due course be issued thereon by the clerk of the circuit court upon the terms and conditions stated in the statute. The land conveyed by a tax deed "shall continue subject and liable for any unpaid taxes thereon." Sec. 12, Chap. 14572, Acts of 1929.

Any holder of a certificate of tax sale, or of a tax deed issued on such a certificate, may foreclose the lien of such certificate or deed in a court of equity by complying with the terms and conditions prescribed in Chapter 14572, Acts of 1929. See also Chapter 15053, Acts of 1931. A deed conveying title to land executed upon a sale of the land under a decree of foreclosure of the lien of a tax sale certificate or of a tax deed upon the land "shall be indefeasible as to all parties defendant in the action." Section 28, Chapter 14572. Tax sale certificates upon which foreclosure proceedings are brought may be redeemed before sale under final decree. Section 21, Chapter 14572, Acts of 1929.

The statutes contemplate that a purchaser of State tax certificates for the purpose of acquiring a tax deed shall have a search of the records made to ascertain all outstanding State tax sale certificates and shall purchase the oldest certificate held by the State and shall pay to the clerk of the circuit court the amount of such certificate and interest thereon, and pay the State, county and district taxes with interest for each subsequent year in which the property was not assessed or was assessed to the State. Sec. 993, C. G. L., Secs. 10, 11, 12, Chap. 14572, Acts of 1929. When a tax deed is applied for, under Section 12, Chapter 14572, Acts of 1929, the applicant must surrender a proper tax sale certificate as a predicate for the tax deed, and must pay "the proper amount for the redemption or surrender of all other outstanding subsequent certificates covering said land"; and the statute requires the tax deed to state that the land conveyed "shall continue subject and liable for any unpaid taxes thereon"; and outstanding tax sale certificates represent unpaid taxes. When a tax deed is issued without the statutory payment of outstanding tax sale certificates or other tax liens on the land, such tax deed is unauthorized by law, and the deed does not eliminate outstanding tax liens. See Sedgwick Co. Comrs. v. Conners, 121 Kan. 105; Dennison v. The City of Keokuk, 45 Iowa 266.

The statutes also contemplate that before instituting proceedings under Chapter 14572, Acts of 1929, to foreclose the lien of tax certificates of tax deeds, the complainant shall have had a search of the records made for outstanding tax certificates and shall have purchased the oldest tax sale certificate held by the State covering the land, and should have "paid all omitted and subsequent (State, county and district) taxes and interest thereon and" shall have "redeemed all subsequent (State) tax sale certificates affecting

the same land"; and that complainant will make defendants in the suit all parties, if any, having State and county tax sale certificates covering the property, which were issued prior to the tax sale certificate upon which the suit is predicated, as well as all other parties including municipalities having tax or other liens or claims upon the property, in order that a foreclosure decree may adjudicate the liens to be satisfied from the proceeds of the foreclosure sale, and that the foreclosure deed may convey an "indefeasible" title to the purchaser, discharged from all the liens adjudicated by the foreclosure decree. If any holders of tax or other liens upon the lands are not made parties to the foreclosure proceedings, they are not bound by the decree rendered in the cause. The State cannot be sued, so all tax liens held by the State must be satisfied before a tax deed is issued or before final foreclosure decree; otherwise the tax deed cannot lawfully be issued, and if issued, would be subject to "unpaid taxes" (Sec. 12, Chap. 14572); and a foreclosure deed is "indefeasible" only against the parties defendant in the foreclosure proceedings. Sec. 28, Chap. 14572.

Since the lands described in a tax deed would be subject to future taxes or tax liens without a provision to that effect in the deed of conveyance, the statutory provision in the tax deed that the lands conveyed "shall continue subject and liable for any unpaid taxes thereon" has reference to prior and existing unpaid taxes on the lands conveyed.

Neither Section 894 and 896 (696) C. G. L., Section 1, Chapter 14572, nor any other statute provides or intends that taxes imposed pursuant to the Constitution and laws of this State shall be a first lien superior to all other liens, *"including all tax liens for prior years,"* as is contended by some of the counsel. The statutes make *all* taxes imposed pursuant to the Constitution and laws of the State a first

lien superior to all other liens "which shall continue in full force and effect until discharged by payment." Such liens "may be enforced in equity," or extinguished by appropriate equity decree in foreclosing the liens evidenced by tax sale certificates or tax deeds under Chapter 14572, Acts of 1929, or under Section 1020 (794) C. G. L., or may be canceled if duly adjudged to be invalid. Secs. 1008, 1038, C. G. L., and Sec. 22, Chap. 14572, Acts of 1929. See also Secs. 1006 (782), 5034 (3228), C. G. L.

In making all taxes imposed under the *Constitution and laws* of this State a first lien superior to all other liens, the statute does not intend that any of such first liens shall have priority over others of such first liens whether the taxes constituting the liens were imposed for the same or for different years. All such liens have equal dignity and no priorities among themselves. The organic provision that the Legislature shall provide for raising sufficient revenue to defray the expenses of the State for *each* fiscal year, is a command to so provide revenue, not an indication of priorities in the liens of taxes assessed in different years.

Taxes "imposed pursuant to the Constitution and laws of this State" are State, county and municipal governmental taxes as distinguished from special assessments. City of Sanford v. Dial, 104 Fla. 1, 142 So. 233.

The statutes impose liens for taxes and authorize the issue and sale of tax certificates for unpaid taxes; and also confer upon the purchasers of the certificates the right to enforce as may be provided by law, the liens represented by the tax sale certificates purchased and transferred. See Sec. 1020 (794) C. G. L.; Sec. 13, *et seq.*, Chap. 14572; First Trust & Sav. Bank v. West Lake Inv. Co., 105 Fla. 590, 141 So. 894.

The complainant's tax deed was issued in 1932 upon a tax sale certificate, No. 14242, dated August 5, 1929, for

unpaid State and county taxes for 1928. Such certificate was issued after the amendment of Section 1003 (779) C. G. L., by Section 12 of Chapter 14572, Acts of 1929, which became effective June 20, 1929. The amendment of 1929 requires the applicant for a tax deed to surrender a tax certificate over two years old and to pay "the proper amount for the redemption or surrender of all other outstanding subsequent certificates covering said land." The use of the word "subsequent" in the above quoted provision is not intended to deprive prior tax liens of their equal dignity and force with subsequent first liens. The statute contemplates that prior tax liens have been paid or are held by purchasers whose liens will be satisfied or the holders will be made parties in foreclosure of tax liens suits.

Under Section 894 C. G. L. originally, and as amended by Section 1, Chapter 14572, Acts of 1929, and under Section 45, Chapter 10847, the Charter Act of the City of Miami, the lien of the tax represented by the defendant Allison Realty Company's tax sale certificate No. 34227, dated June 4, 1928, for City of Miami taxes for 1927, is a first lien of equal dignity with liens for State and county taxes of subsequent years; and such first lien continues until discharged by payment in full or by satisfaction or otherwise as the law may provide, such as in the foreclosure of tax liens, or by cancellation for illegality, or reduction for excessive valuation for assessment or otherwise.

When an administrative tax deed is being foreclosed as a lien, such deed represents the liens of all tax sale certificates purchased or redeemed and also liens of all taxes paid in order to obtain the tax deed.

The lien of the tax sale certificate, No. 34227, dated June 4, 1928, for unpaid city taxes of the City of Miami for the year 1927, bought and held by the defendant, Allison Realty

Company, should share ratably or in proper proportions and without priorities in the proceeds of the foreclosure sale, with the liens held by the complainant for State, county and municipal taxes paid by the complainant for years subsequent to 1927 in obtaining the tax deed covering the same property. That would discharge the lien of the city tax certificate No. 34227. Other defendants did not appeal from the decree.

Reversed for appropriate proceedings.

DAVIS, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.