Mr. Charles D. Bailey, Jr. Sarasota-Manatee Airport Attorney Post Office Box 3258 Sarasota, Florida 34230-3258
Dear Mr. Bailey:
On behalf of the Sarasota-Manatee Airport Authority, you ask substantially the following question:
May the Sarasota-Manatee Airport Authority enter into an interlocal agreement under Part I, Chapter 163, Florida Statutes, with a charter or non-charter county to enable the custodian of county funds to hold and to invest the surplus public funds of the airport authority as authorized by the authority's written investment policy and section 218.345, Florida Statutes?
In sum:
The Sarasota-Manatee Airport Authority is authorized to enter into an interlocal agreement with a charter or non-charter county to enable the custodian of county funds to hold and invest surplus funds of the authority pursuant to a written investment policy formulated by the authority and in keeping with the requirements set forth in section 218.345, Florida Statutes.
The Sarasota-Manatee Airport Authority (SMAA) is a bicounty governmental agency created by special act of the Florida Legislature[1]
for the purpose of "acquiring, constructing, improving, financing, operating, and maintaining airport facilities."[2] The enabling legislation for the authority states that it is "a body politic and corporate" and a "public instrumentality"[3] and it is specifically designated a political subdivision for purposes of certain tax statutes.[4] The SMAA is an independent special district as defined by section 189.403, Florida Statutes, and has been identified as such by the Florida Department of Community Affairs pursuant to section 189.4035, Florida Statutes.[5]
Chapter 91-358, Laws of Florida, provides: All moneys received pursuant to the authority of this act are deemed to be trust funds and must be held and applied solely as provided in this act. The resolution authorizing the issuance of bonds or the trust agreement securing such bonds must provide that any officer to whom, or bank, trust company, or fiscal agent to which, such moneys are paid shall act as trustee of such moneys and shall hold and apply the same for the purposes hereof, subject to such regulations as the act and such resolution or trust agreement may provide.[6]
Thus, the enabling legislation for the airport authority recognizes that funds of the authority may be paid over to another who may act as trustee of such funds. This section does not address the investment of airport authority funds; rather, it prohibits their expenditure for purposes other than those set forth in the act.
Section 218.345, Florida Statutes, authorizes the governing body of a special district to "invest and reinvest any surplus public funds in its control or possession" in certain, specified areas. These include investments in the Local Government Surplus Funds Trust Fund created by section 218.405, Florida Statutes; in United States Government securities; and in interest-bearing time deposits or savings accounts in state or national banks.[7] For purposes of this act a special district "means a special district as defined in s. 189.403(1)" and would include the Sarasota-Manatee Airport Authority. Thus, the authority may[8]
direct its surplus funds into those investments described in section 218.345, Florida Statutes.
The investment authority of counties and the investments into which surplus county funds may be directed parallel those set forth in section 218.345. Section 125.31(1), Florida Statutes, authorizes counties, in the absence of an ordinance or other law, to invest surplus public funds in the Local Government Surplus Funds Trust Fund, in United States Government securities, and in interest-bearing time deposits or savings accounts in state or federal banks. I would note that, in the absence of any express charter provision otherwise directing the investment of surplus county funds, section 125.31(1), Florida Statutes, would apply equally to a charter county and a non-charter county.
However, section 125.31(1)(e), Florida Statutes, does authorize counties to invest in
[o]bligations of the Federal National Mortgage Association, including Federal National Mortgage Association participation certificates and mortgage pass-through certificates guaranteed by the Federal National Mortgage Association[.]
This particular authority is not shared by special districts such as the Sarasota-Manatee Airport Association.[9]
The Florida Interlocal Cooperation Act of 1969 was enacted
to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.[10]
The act authorizes any two public agencies of this state, including special districts and counties,[11] to exercise jointly "any power, privilege, or authority which such agencies share in common and which each might exercise separately."[12] Such a joint exercise of power pursuant to this act must be undertaken by executing a contract in the form of an interlocal agreement.[13]
Both Sarasota and Manatee counties and the Sarasota-Manatee Airport Authority have the authority to invest surplus public funds in particular investments as set forth in sections 125.31(1)(a)-(d), and (f), and 218.345, Florida Statutes. This is a power they share in common and which each may, by statute, exercise separately.
Therefore, it is my opinion that the control and direction of surplus funds into the investments authorized by section 218.345, Florida Statutes, may be the subject of an interlocal agreement between the Sarasota-Manatee Airport Authority and either a charter[14] or non-charter county.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Chapter 31263, Laws of Florida (1955), as amended by Chs. 91-358 and 92-242, Laws of Florida.
[2] Section 3(1), Ch. 91-358, Laws of Florida.
[3] Id.
[4] Chapter 91-358, s. 18, at 94, Laws of Florida, provides that the authority is a political subdivision within the meaning of the exemptions granted under s. 196.199, Fla. Stat.
[5] See, Sarasota-Manatee Airport Authority v. Mikos,605 So.2d 132, 133 (Fla. 2d DCA 1992).
[6] Chapter 91-358, s. 11, at 90, Laws of Florida.
[7] Section 218.345(1)(a)-(e), Fla. Stat.
[8] Section 218.345(6), Fla. Stat., states that "[t]he provisions of this section are supplemental to any and all other laws relating to the legal investments of special districts."
[9] Cf., Op. Att'y Gen. Fla. 91-42 (1991), concluding that the Cedar Hammock Fire Control District could not invest its surplus funds, either directly or through an investment pool, in investments that did not meet the requirements of s. 218.345, Fla. Stat.; and Op. Att'y Gen. Fla. 80-15 (1980).
[10] Section 163.01(2), Fla. Stat.
[11] Section 163.01(3)(b), Fla. Stat., defines "Public agency" to mean:
a political subdivision, agency, or officer of this state or of any state of the United States, including, but not limited to, state government, county, city, school district, single and multipurpose special district, single and multipurpose public authority, metropolitan or consolidated government, an independently elected county officer, any agency of the United States Government, and any similar entity of any other state of the United States.
[12] Section 163.01(4), Fla. Stat. And see, e.g., Op. Att'y Gen. Fla. 83-46 (1983), concluding that a group of county property appraisers may enter into an interlocal agreement for the joint provision and utilization of data processing and computer services.
[13] Section 163.01(5), Fla. Stat.
[14] This conclusion assumes that a charter county has no charter provision or ordinance that would control over s. 125.31, Fla. Stat.